## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CR. No. C-09-1063 |
| | § | (C.A. No. C-12-126 |
| GILBERTO ELOY RAMIREZ, | § | |
|     Defendant/Movant. | § | |

### MEMORANDUM OPINION AND ORDER DISMISSING WITH PREJUDICE MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND DENYING CERTIFICATE OF APPEALABILITY

Pending before the Court is Defendant Gilberto Eloy Ramirez' (Ramirez) motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255. D.E. 27. The government filed a combined response, motion for summary judgment, and motion to dismiss. D.E. 45-47. Ramirez filed a reply. D.E, 49. For the reasons set forth herein, Ramirez' § 2255 motion (D.E. 27) is DISMISSED with prejudice and he is DENIED a Certificate of Appealability.

### I.  JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II.  BACKGROUND

Ramirez was stopped at the Falfurrias, Texas Border Patrol checkpoint in December 2009. He was operating a Kenworth tractor trailer. While he was stopped, a drug canine alerted to his tractor. During secondary inspection, the dog alerted again and indicated to the battery compartment. Upon inspection, agents discovered 4 bundles of marijuana with an

approximate weight of 2.76 kilograms. Ramirez admitted the drugs were his and was arrested. D.E. 1.

Ramirez made his first appearance in federal court the day of his arrest. Counsel was appointed. D.E. 2, 4. Appointed counsel was replaced by retained counsel shortly thereafter. D.E. 9, 10, Minute Entry December 15, 2009. Ramirez was indicted on December 23, 2009, for possession with intent to distribute less than 50 kilograms of marijuana, 2.76 (gross weight) kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D). He was arraigned a week later. Minute Entry December 29, 2009.

On February 1, 2010, Ramirez pled guilty at rearraignment pursuant to a plea agreement with the government. In exchange for his plea of guilty and relinquishment of his right to appeal or file a post-conviction motion to vacate pursuant to 28 U.S.C. § 2255, the government agreed to recommend maximum credit for acceptance of responsibility and to recommend a sentence within the applicable guideline range. D.E. 15 at ¶ 2, 7. Ramirez and his counsel signed the plea agreement. Id. at p. 5. The Court advised Ramirez of the maximum punishment during rearraignment, "THE COURT: The maximum possible punishment is a period of five years in a penitentiary. There's a maximum  $250,000 fine, a mandatory $100 special assessment, and a supervised release term. That period of supervision must be at  least two years. Supervision can last as long as the rest of your life." D.E. 40 at 7-8. Ramirez testified he understood. Id. at 8. Ramirez further testified that he read the plea agreement and discussed it with counsel. Id. at 9-10. The Court advised him of the appeal and post-conviction waivers,

16 THE COURT: At Page 7, Paragraph 3, you are giving up
17 your right to appeal your conviction and your sentence unless
18 the Court sentences you above the statutory maximum or departs
19 upward from the guidelines when not requested to do so by the
20 United States.
21 You are also giving up your right to file a 2255
22 petition used by Defendants to ask the Court to reconsider
23 their case or to see if it can be modified or vacated.
24 You understand you're giving up these rights?
25 THE DEFENDANT: Yes, your Honor. I understand.
1 THE COURT: You want to give up these rights?
2 THE DEFENDANT: Yes, your Honor.
3 THE COURT: And did you talk with your attorney about
4 whether or not you should give up these rights?
5 THE DEFENDANT: Yes, your Honor, I have.
6 THE COURT: Has anybody promised you what your
7 sentence would be?
8 THE DEFENDANT: No, your Honor. Nobody's promised me
9 nothing.

Id. at 10-11. Ramirez pled guilty and agreed with the government's recitation of facts. Id. at 12-14.

The Court ordered preparation of a Presentence Investigation Report. D.E. 16. The PSR calculated Ramirez' base offense level at 10, based upon 1.82 kilograms net weight of marijuana. D.E. 23 at ¶ 10. Ramirez had previous convictions for drug trafficking offenses which qualified him as a career offender and increased his offense level to 17 pursuant to §

4B1.1 of the Sentencing Guidelines.[1] Id. at ¶ 18. He was given credit for acceptance of responsibility, which reduced his total offense level to 14. Id. at ¶ 20.

Ramirez' criminal history began in 1979 when he was first convicted of drug possession. D.E. 17 at ¶ 22. Although he was convicted of possession and not distribution, he had 38 pounds of marijuana with him at the time he was arrested. Id. That year he was convicted three times on drug related charges. Id. at ¶¶ 22-24. A number of his offenses were more than 15 years old and did not count in his criminal history points. See id. at ¶¶ 22-26.

Ramirez was convicted in federal court on Conspiracy to Distribute Marijuana and Cocaine and Possession with Intent to Distribute 612 Pounds of Marijuana in 1979. Id. at ¶ 23. Later that same year he was convicted of Felony Delivery of Marijuana in state court. Id. at ¶ 24. In 1988, Ramirez was convicted of Possession With Intent to Distribute 399 Kilograms of Marijuana in federal court. Id. at ¶ 27. In 2001, Ramirez was again convicted in federal court, this time for Aiding and Abetting the Distribution of 500 Grams or More of Cocaine. Id. at ¶ 28. Ramirez' criminal history points totaled 6 before the addition of points for his arrest while on supervised release and within 2 years of his prior release from custody. D.E. 17 at ¶¶ 29-31. His total criminal history points totaled 9, which established a criminal

---

[1] The guidelines define career offender as follows,

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

history category of IV. Because Ramirez was a career offender, his criminal history category was increased to VI. Id. at ¶¶ 29-32. Ramirez' resulting guideline range was 37-46 months imprisonment, 2 years to life on supervised release, a fine of $4,000-$40,000, and possible community restitution. Id. at ¶¶ 48-58.

Counsel filed objections to the PSR in which she complained of, 1) the quantity of drugs listed in the original PSR (gross amount, rather than the net amount), 2) the resulting overstatement of the offense level, and 3) to Ramirez' alleged gang affiliation. Counsel requested the Court consider a downward departure from the career offender calculation because it increased the guideline range so substantially in comparison with the low guideline range without career offender status. Counsel also urged the Court to consider leniency based upon Ramirez' family circumstance; his father has Alzheimer's and his son has Down's Syndrome. Id.

The Court recognized Ramirez' long history of drug trafficking, even noting the drug quantities involved in his convictions for possession offenses were representative of distribution amounts. See D.E. 41 at 7-8. The Court sentenced Ramirez to a high-end guideline sentence of 46 months, lifetime supervised release, no fine, and a $100 special assessment. D.E. 25; 41 at 8-9.[2] At the same time, Ramirez' supervised release was revoked

---

[2]THE COURT: I think your extensive criminal history
11 overrides the amount of marijuana that was involved in this
12 case, and I'm going to grant the Government's request that you
13 be sentenced to 46 months in the custody of the Bureau of
14 Prisons. That's within the guidelines. That's within your
15 Plea Agreement, but more importantly, it's within what I
16 believe to be, aside from all that, an appropriate sentence.
17 Frankly, 60 months is an appropriate sentence, and

in 4:01-cr-00121-002, and he was sentenced to 14 months to run consecutively to his sentence in the present case. D.E. 639 (4:01-cr-00121-002).

Consistent with his plea agreement, Ramirez did not appeal.

### III.  MOVANT'S ALLEGATIONS

Ramirez claims that he was denied his constitutional right to effective assistance of counsel in the district court proceedings and that his plea was not knowing and voluntary because he did not know that he could be sentenced to lifetime supervised release. D.E. 27 at Ground One. He further claims that his trial counsel was ineffective because counsel failed

18 it's only because the guidelines exist that I do sentence you
19 to less than 60 months. You are a poster child for a career
20 criminal. That's what you are. You are a career drug
21 trafficker.
22 I'm going to impose a lifetime period of supervision.
23 This Defendant will be on supervision throughout the rest of
24 his life. He is a career drug trafficker as defined by the
25 guidelines, and as well as defined by all other ordinary
1 decisions of the ordinary man on the street that that's what
2 his career has been without regard to calculations. And there
3 is no reason for the Court to believe that he's going to change
4 his stripes.
5 And therefore, the Court finds that high supervision
6 is needed throughout his life, and it's a shame that we have to
7 waste the time that we do on this man, but the public
8 protection demands that he be supervised throughout his life.
9 And don't send to me any request that he be taken off
10 supervision. You can send it to the next judge but I'm dealing
11 with Mr. Ramirez today, and it's my judgment.
12 So I think every bit of the high end of the
13 guidelines is needed to provide a sufficient sentence in
14 accordance with all the factors of Title 18, Section 3553, and
15 at the high end of the guidelines is appropriate, not only
16 based on the guidelines decision but my decision and the
17 Defendant's extensive history as well as other misbehaviors
18 require a lifetime supervision.

Id.

to, 1) advise him of the possibility of lifetime supervised release, 2) file a notice of appeal as requested, 3) failed to object to the incorrect guideline calculation, and 4) misadvised him regarding his sentencing exposure. Id. at Ground Two. Ramirez also claims an actual conflict between his interests and that of counsel on the grounds that the plea agreement benefitted counsel by disallowing appeal or collateral attack on the judgment. Id. at p. 15. Finally, Ramirez claims that the Court violated his due process rights by miscalculating the guideline range and by incorrectly designating Ramirez as a career offender. Id.

The government urges dismissal on the grounds that the motion is untimely and that Ramirez waived his right to file the motion by the terms of his plea agreement. D.E. 45 at 2, 4-5, 6-11. The government further asserts that the motion is without merit. Id. at 11-23.

## IV.  ANALYSIS

### A.   28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.      Statute of Limitations § 2255**

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[3] 28 U.S.C. § 2255. The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. Clay v. United States, 537 U.S. 522 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000) (per curiam).

In this case, Judgment was entered on the docket on April 22, 2010. Ramirez was required to file his notice of appeal within 14 days from entry of judgment. Fed. R. App. P. 4(b)(1)(A). Because he did not appeal, his judgment became final on the expiration of that 14 day period, May 6, 2010.[4] Ramirez was required to file his § 2255 motion no later than May 6, 2011. He filed it on April 12, 2012, 350 days late.

---

[3] The statute provides that the limitations period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

[4] United States v. Plascencia, 537 F.3d 385, 389-90 (5th Cir. 2008) ("conviction became final upon the expiration of the time for filing a timely notice of appeal. . . ."); see also United States v. Gonzalez, 592 F.3d 675, 677 (5th Cir. 2009) (conviction became final when the deadline for filing an appeal expired).

The § 2255 form has a section in which the applicant is instructed to explain the reasons for an untimely filing. Ramirez left that section blank. Although equitable tolling may allow a late filed motion, Ramirez has not attempted to assert any grounds for such tolling. United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002) (although the limitations period for § 2255 motions is not considered a jurisdictional bar, it is subject to equitable tolling "only 'in rare and exceptional cases.'"). After receiving the government's response urging dismissal on the ground that the motion was untimely, Ramirez filed a response that did not address the timeliness issue. Accordingly, the Court concludes that Ramirez' failure to file his § 2255 motion within the one-year limitations period requires that the motion be dismissed with prejudice as time-barred. Accordingly, the Court does not address his remaining claims.

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Ramirez has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

The Court concludes that reasonable jurists could not debate the denial of Ramirez' § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that Ramirez cannot establish at least one of the Slack criteria. Specifically, jurists of reasons would not find this Court's procedural rulings debatable. Accordingly, Ramirez is not entitled to a COA as to his claims.

## VI.  CONCLUSION

For the foregoing reasons, Ramirez' § 2255 motion (D.E. 27) is DISMISSED WITH PREJUDICE and he is DENIED a Certificate of Appealability.

It is so ORDERED on the 4th day of January 2013.

Hayden Head
_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE